IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STEVEN SCOTT and SUSAN SCOTT, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 4:11-CV-600 |
| | § | |
| WELLS FARGO BANK, NA d/b/a WELLS FARGO HOME MORTGAGE, and FEDERAL HOME LOAN MORTGAGE CORPORATION, | § § § § | |
| | § | |
| Defendants. | § | |

**<u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT</u>**

The following are pending before the court:

1. Defendants' motion for summary judgment and brief in support (docket entry #15);

2. Plaintiffs' response and brief in opposition to Defendants' motion for summary judgment (docket entry #20); and

3. Defendants' reply to Plaintiffs' response and brief in opposition to Defendants' motion for summary judgment (docket entry #21).

---

1. Defendants' objections to and motion to strike Plaintiffs' summary judgment evidence (docket entry #23);

2. Plaintiffs' response to Defendants' objections to Plaintiffs' summary judgment evidence (docket entry #24);

3. Defendants' reply to Plaintiffs' response to Defendants' objections to Plaintiffs' summary judgment evidence (docket entry #25); and

4. Plaintiffs' sur-reply to Defendants' objections to Plaintiffs' summary judgment evidence (docket entry #26).

Having considered the Defendants' motion for summary judgment and the subsequent briefing thereto, the court finds that the motion should be granted.

### OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

The Defendants filed a motion to strike portions of the Plaintiffs' summary judgment evidence (docket entry #23), objecting primarily to portions of Plaintiff Steven Scott's affidavit. Having considered the objections, the court notes that it will review the evidence provided in accordance with the appropriate summary judgment and evidentiary standards in reaching its decision.

### FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs challenge the November 2009 foreclosure sale of the property located at 1800 Lake Hill Lane, Plano, Texas 75023 ("the Property"). On October 30, 2001, the Plaintiffs executed a Note promising to pay $152,850.00, plus interest, to Texas Residential Mortgage, L.P. ("Texas Residential"). To secure repayment of the Note, the Plaintiffs executed a Deed of Trust. On the day of closing, Texas Residential assigned the Note and Deed of Trust to Wells Fargo.

In March 2008, the Plaintiffs were in default on their loan. On March 17, 2008, Wells Fargo sent a letter via certified mail to Plaintiff Steven Scott, notifying the Plaintiff about his delinquent mortgage loan and advising the Plaintiff that failure to cure the default would lead to acceleration of the debt and loss of the Property at a foreclosure sale. On May 15, 2008, the Plaintiffs entered into a Loan Modification Agreement with Wells Fargo.

In November 2008, the Plaintiffs again fell behind on their mortgage payments. In December 2008, the Plaintiffs visited a local Wells Fargo branch to inquire about their options for financial assistance with their mortgage. The Plaintiffs were directed to contact Wells Fargo's loss mitigation

department. From December 2008 through February 2009, the Plaintiffs frequently contacted Wells Fargo about a loan modification. At Wells Fargo's request, the Plaintiffs provided hardship letters and financial information to assist in the loan modification process. In the hardship letters, the Plaintiffs explained that they had suffered loss of employment, extensive legal fees with respect to their son's child custody issues, expenses associated with the care of an aging parent, and diminished savings.

On December 14, 2008, Wells Fargo sent a notice of default letter to the Plaintiffs, notifying the Plaintiffs of the delinquency on the mortgage loan and advising the Plaintiffs that failure to cure the default would lead to acceleration of the debt and loss of the Property at a foreclosure sale. Thereafter, the Plaintiffs failed to make any payments to Wells Fargo from December 2008 through April 2009. As of April 2009, the Plaintiffs were six monthly installments behind.

Wells Fargo subsequently retained the law firm of Barrett Daffin Frappier Turner & Engel, L.L.P. (the "Law Firm") to conduct the foreclosure proceedings. On February 26, 2009, the Law Firm sent the Plaintiffs a letter notifying them that the debt had been accelerated and a foreclosure sale was scheduled for April 7, 2009. Upon receiving the notification, the Plaintiffs contacted Wells Fargo. Wells Fargo assured the Plaintiffs that the foreclosure sale would not proceed while the Plaintiffs' loan modification application was under review. In March 2009, Wells Fargo postponed the foreclosure sale date from April 7, 2009 to May 5, 2009 while it reviewed the Plaintiffs' loan modification application.

On April 29, 2009, Wells Fargo approved the Plaintiffs for a Special Forbearance Agreement. The Plaintiffs received a letter confirming same on May 18, 2009. The Plaintiffs agreed to pay Wells Fargo $1,000.00 on May 13, 2009, $1,000.00 on June 13, 2009, $1,000.00 on August 27, 2009, and

$14,701.43 on September 27, 2009.

The Plaintiffs timely paid Wells Fargo the agreed upon amounts in May and June of 2009. The Plaintiffs did not timely make the August 27, 2009 payment to Wells Fargo; however, the Plaintiffs paid the agreed upon amount four days later on August 31, 2009.

On August 31, 2009, the Plaintiffs notified Wells Fargo that they would not be able to make the final payment under the Special Forbearance Agreement. On September 17, 2009, the Plaintiffs provided a subsequent hardship letter to Wells Fargo and requested a loan modification to avoid foreclosure. On that same day, Wells Fargo determined that the Plaintiffs did not qualify for a loan modification under the Home Affordable Modification Program ("HAMP") because the Plaintiffs could not afford modified payments. However, on September 22, 2009, Wells Fargo sent a HAMP solicitation letter to the Plaintiffs indicating that the Plaintiffs might be eligible for a trial modification plan under HAMP, and the estimated new monthly payment would be $466. The letter further advised the Plaintiffs to contact Wells Fargo to finalize the trial modification plan. The Plaintiffs repeatedly contacted Wells Fargo and left messages, but to no avail. Finally, according to the Plaintiffs, on October 6, 2009, the Plaintiffs reached Wells Fargo and accepted the HAMP loan modification.

Thereafter, the Plaintiffs did not make the final payment in the amount of $14,701.43 under the Special Forbearance Agreement on or before September 27, 2009. Wells Fargo subsequently resumed foreclosure proceedings.

On October 12, 2009, the Law Firm sent the Plaintiffs a letter, notifying them that the foreclosure sale on the Property was scheduled for November 3, 2009. On October 30, 2009, the Plaintiffs contacted Wells Fargo. According to the Plaintiffs, Wells Fargo informed the Plaintiffs

that the foreclosure sale would be postponed.

On November 3, 2009, Wells Fargo foreclosed on the Property. The Property was sold to FHLMC for $159,106.50. At the time of the foreclosure sale, the total debt on the Property was $160,155.19. After the foreclosure sale, the Plaintiffs contacted Wells Fargo, requesting that Wells Fargo rescind the foreclosure sale and approve the Plaintiffs for a loan modification. On January 14, 2010, Wells Fargo notified the Plaintiffs via letter that their request to rescind the foreclosure sale had been denied. The Plaintiffs remain in possession of the Property.

The Plaintiffs originally filed suit in Collin County, Texas. The Defendants removed the case to this court on September 16, 2011. In the Plaintiffs' first amended complaint – the live pleading in this action – the Plaintiffs assert the following claims against the Defendants: (1) breach of contract and anticipatory breach of contract; (2) breach of common law tort of unreasonable collection efforts; (3) malice; (4) violation of the Texas Debt Collection Practices Act, Texas Finance Code §§ 392.001, *et seq.*; (5) negligent misrepresentation; and (5) suit to quiet title and trespass to try title. The Plaintiffs also seeks a declaratory judgment, exemplary damages, and an accounting of all transactions on their mortgage loan. The Defendants subsequently moved for summary judgment on all of the Plaintiffs' claims.

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material. *See id.* at 248.

Both parties have a responsibility in the summary judgment process. *Celotex*, 477 U.S. at 323–24. First, the party seeking summary judgment must show that the admissible evidentiary material of record and any affidavits submitted by the nonmoving party are insufficient to permit the nonmoving party to carry its burden of proof. The nonmoving party must then set forth "specific facts showing that there is a genuine issue for trial" and "may not rest upon the mere allegations or denials of his pleadings." FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 248. "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Roach v. Allstate Indemnity Co.*, 2012 WL 1478745 (5th Cir. 2012), citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

DISCUSSION AND ANALYSIS

**<u>Plaintiffs' Breach of Contract Claims</u>**

To prevail on a breach of contract claim, a plaintiff must prove: "(1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach." *Oliphant Fin., LLC v. Patton*, No. 05-17-01731, 2010 WL 936688, at *3 (Tex. App.—Dallas Mar. 17, 2010, pet. denied) (mem. op.); *see also Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Here, the parties do not dispute the existence of a valid contract arising out of the Note and Deed of Trust. The Defendants argue that the Plaintiffs

cannot establish that they complied with their obligations because the Plaintiffs failed to make their required monthly payments and, therefore, cannot maintain a claim of breach of contract against the Defendants. The court agrees. *See Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 341 (5th Cir. 2012) ("Under well-established principles of Texas contract law, that material breach would normally prevent [the Plaintiffs] from maintaining a breach-of-contract claim." (citing *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990))). The Plaintiffs do not dispute that they defaulted on their mortgage obligations. However, because the Plaintiffs allege that the cause of the breach was the Defendants' actions, the court will address the merits of the Plaintiffs' breach of contract allegations.

1. **Texas Property Code § 51.002**

The Plaintiffs first allege that the Defendants never gave the Plaintiffs a right to cure and reinstate the Note as required by § 51.002(d) of the Texas Property Code. According to paragraph 16 of the Deed of Trust, the Deed of Trust is governed by federal law and the law of the jurisdiction in which the Property is located. Section 51.002(d) of the Texas Property Code requires the mortgage servicer of the debt to "serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)." Texas common law also requires that the mortgagor be notified of the mortgagee's intent to accelerate the debt. *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982). Section 51.002(e) of the Texas Property Code provides: "[s]ervice of a notice under this section by certified mail is complete when the notice

is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address."

The Defendants produced a letter sent to the Plaintiffs on December 14, 2008 indicating that the Plaintiffs' loan was in default. The letter goes on to state the amount due to cure the default ($4,749.27) and the date the default must be cured to avoid acceleration and foreclosure (January 13, 2009). DEF. MTN. FOR SUMM. JUDGMENT, EXH. 1H. The letter was sent via certified mail number 7100 4047 5100 6350 0562. The Plaintiffs do not dispute that they received the letter.

The Defendants also produced a copy of a notice sent by the Defendants' foreclosure counsel, the Law Firm, sent via certified mail number 7160 9668 9670 2630 8613, to the Plaintiffs on February 26, 2009. This letter explained that the mortgagee had opted to accelerate the debt and that a foreclosure sale was scheduled to take place on April 7, 2009—40 days after the letter was sent. This letter also stated that the Plaintiffs have the right to reinstate the loan as provided by the terms of the Deed of Trust and the right to bring a court action "to assert the non-existence of a default or any other defense to acceleration and foreclosure which they may have." DEF. MTN. FOR SUMM. JUDGMENT, EXH. 2B. The court finds that the Defendants complied with all of their obligations under Section 51.002 of the Texas Property Code, and there is no genuine issue of material fact on this claim.[1]

---

[1] Although not pled in their first amended complaint, the Plaintiffs now additionally contend that the above-referenced notices were withdrawn because the Plaintiffs entered into a repayment plan and loan modification agreement with the Defendants. However, the Special Forbearance Agreement provided that "acceptance of any payments made by you will not be deemed to affect the acceleration of the Note and/or Mortgage in the event of default under the terms of this agreement . . .. If your [sic] default on the repayment plan outlined below, any other terms of this agreement, any additional terms of your Note or Mortgage not addressed here, we will resume the foreclosure action immediately." Based on the language contained in the Special Forbearance Agreement, the Plaintiffs failed to present summary judgment evidence that the notices were withdrawn.

## 2. Good Faith and Fair Dealing

The Plaintiffs further base their breach of contract claim on the duty of good faith and fair dealing. Texas law does not "recognize a common law duty of good faith and fair dealing in transactions between a mortgagee and mortgagor, absent a special relationship marked by shared trust or an imbalance in bargaining power." *Coleman v. Bank of Am., N.A.*, No. 3-11-cv-0430-G-BD, 2011 WL 2516169, at *1 (N.D. Tex. May 27, 2011) (citing *FDIC v. Coleman*, 795 S.W.2d 706, 708–09 (Tex. 1990)) (internal quotations omitted). In this case, the Plaintiffs have not produced any evidence showing a "special relationship" with the Defendants. Therefore, the court finds that the Plaintiffs have failed to offer competent summary judgment evidence in support of their breach of the duty of good faith and fair dealing allegation.

## 3. Statute of Frauds/Unilateral Contract

The Plaintiffs further contend that the September 22, 2009 HAMP solicitation letter was an offer to modify the Plaintiffs' loan that was reduced to a writing. The letter provided that the Plaintiffs might be eligible for a trial modification plan under HAMP, and the estimated new monthly payment would be $466. The letter further advised the Plaintiffs to contact Wells Fargo to finalize the trial modification plan. The Plaintiffs allege that they repeatedly contacted Wells Fargo and left messages, but to no avail. Finally, according to the Plaintiffs, on October 6, 2009, the Plaintiffs reached Wells Fargo and accepted the HAMP loan modification. However, the modification was never reduced to writing and the Plaintiffs made no payments in furtherance of this modification.

Any contract modifying the Note and Deed of Trust is subject to the statute of frauds and must be in writing to be enforced. TEX. BUS. & COM. CODE § 26.02(a)(2) & (b). Because the HAMP

solicitation letter was merely an invitation to discuss modifying the terms of the Plaintiffs' loan, it is unenforceable. Neither party has put forth any evidence that the terms of this offer were reduced to writing; therefore, no genuine issue of material fact exists as to this claim.

The Plaintiffs raise promissory estoppel and partial performance in response to the Defendants' statute of frauds argument. The September 22, 2009 solicitation letter provides that the Plaintiffs must contact Wells Fargo by October 6, 2009 to establish the trial modification plan. The letter further states that Wells Fargo will schedule a date for the Plaintiffs' first trial payment using an automatic payment service. The letter indicates that the Plaintiffs would need to provide their checking account information to Wells Fargo during this telephone call. Even if the Plaintiffs did contact Wells Fargo by October 6, 2009 and accept the offer under HAMP, as they aver they did, the Plaintiffs offered no summary judgment evidence that a date was scheduled for their first trial payment. Additionally, the Plaintiffs took no action to ensure payment once they discovered monies had not been withdrawn from their account. Finally, the Plaintiffs aver that Wells Fargo represented that it would cancel the foreclosure sale scheduled for November 3, 2009. However, the Plaintiffs had made no payments per the alleged October 6, 2009 acceptance of the modification. The court, therefore, declines to apply any equitable doctrines removing the requirements of the statute of frauds. Accordingly, the Plaintiffs failed to put forth any evidence to create a genuine issue of material fact on this claim.

### 4. Waiver

The Plaintiffs next allege that Wells Fargo waived its right to sell the Property under the Deed of Trust. Under Texas law, "[w]aiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots*

*Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). The terms of the Deed of Trust make clear that the lender's delay in exercising any of its options does not result in a waiver of those rights. Paragraph 12 of the Deed of Trust provides as follows:

> Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy, including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest or Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

The Plaintiffs have not pointed to any evidence that Wells Fargo intentionally relinquished its right to foreclose or acted in a way inconsistent with claiming its right to foreclose. Accordingly, the Defendants' motion for summary judgment on the Plaintiffs' waiver claim is hereby **GRANTED**.

### 5. Anticipatory Breach of Contract

An anticipatory breach of contract "is a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial performance." *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). To establish a claim for anticipatory breach of contract, a plaintiff must show: "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004). "An anticipatory repudiation of a contract may consist of either words or actions by a party to that contract that indicate an intention that he or she is not going to perform the contract according to its terms." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 631 (N.D. Tex. 2010). But "the declaration of intent to abandon must be in positive and unconditional terms." *Preston v. Love*, 240 S.W.2d 486,

487 (Tex. Civ. App.—Austin 1951, no writ). Oral modifications of contracts are unenforceable under the Texas statute of frauds. TEX. BUS. & COM. CODE § 26.02(a)(2) & (b); *see also Water Dynamics, Ltd. v. HSBC Bank USA, Nat. Ass'n*, No. 12-10307, 2013 WL 363118, at *1 (5th Cir. Jan. 30, 2013). Therefore, the only contract in existence in this case was the one created by the Note and Deed of Trust. The Plaintiffs have put forth no evidence that the Defendants repudiated their obligations under the Note and Deed of Trust so there is no genuine issue of material fact on this claim, and the Defendants' motion for summary judgment on the Plaintiff's anticipatory breach of contract claim is **GRANTED**.

**Plaintiffs' Unreasonable Collection Efforts Claim**

Under Texas law, "(u)nreasonable collection is an intentional tort." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.). "[T]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case." *Id.*; *see also B.F. Jackson, Inc. v. Costar Realty Info., Inc.*, No. H-08-3244, 2009 WL 1812922, at *5 (S.D. Tex. May 20, 2009). Pleadings sufficient to support a claim for unreasonable collection efforts must contain facts that amount to "a course of harassment" by the defendant that "was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-cv-370, 2011 WL 676955, at *6 (E.D. Tex. Jan. 27, 2011), *adopted by*, 2011 WL 675392 (E.D. Tex. Feb. 16, 2011). The standard for showing unreasonable collection efforts requires intent, not mere negligence. *Bray v. Cadle Co.*, No. 4:09-cv-663, 2010 WL 4053794, at *19 (S.D. Tex. Oct. 14, 2010); *see also Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 342 (5th Cir. 2012) (noting the *Lathram* standard "has largely been disavowed by Texas

courts"); *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 636 (N.D. Tex. 2010) ("[E]vidence of negligence is insufficient to support a cause of action for unreasonable collection efforts.").

The Plaintiffs argue that the Defendants' actions were unreasonable. Specifically, the Plaintiffs assert that the Defendants, knowing that the Plaintiffs could not pay the balloon payment that was agreed upon in the Special Forbearance Agreement, offered the Plaintiffs a HAMP loan trial modification but failed to perform under the terms of the trial modification and that such failure was malicious and wanton. The Plaintiffs, however, have offered no summary judgment evidence that the Defendants' actions amounted to a course of harassment that was willful, wanton, malicious, or intended to inflict mental anguish and bodily harm. Therefore, the Defendants' motion for summary judgment on this claim is **GRANTED**.

**Plaintiffs' Texas Finance Code/Texas Debt Collection Practices Act Claims**

The Plaintiffs allege that the Defendants violated §§ 392.301(a)(8), 392.303(a)(2), 392.302(4), 392.304(a)(8), and 392.304(a)(19) of the Texas Finance Code, all portions of the Texas Debt Collection Practices Act ("TDCPA"). The court will address each section in turn.

1. **Section 392.301(a)(8)**

Section 392.301(a)(8) of the TDCPA prohibits debt collectors,[2] in debt collection,[3] from using threats, coercion, or attempts to coerce that threaten to take an action prohibited by law. The Plaintiffs argue that the Defendants violated this section by foreclosing on the Property without

---

[2] A debt collector is "a person who directly or indirectly engages in debt collection." TEX. FIN. CODE § 392.001(6).

[3] Debt collection is "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due to a creditor." TEX. FIN. CODE §392.001(5). A "consumer debt" is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." TEX. FIN. CODE § 392.001(2).

complying with the terms of the Deed of Trust. The Plaintiffs further argue that the Defendants violated this section by failing to comply with the terms of the HAMP trial modification. Not only does Section 392.301(b)(3) specifically exclude the exercising of a "statutory or contractual right of seizure, repossession or sale that does not require court proceedings" from its provisions, *see* TEX. FIN. CODE § 392.301(b)(3), the court has already found no fact issue as to the Plaintiffs' allegation that the Defendants failed to comply with the Deed of Trust. Further, the court has found that the parties did not enter into a valid, enforceable agreement to modify the loan or stall the foreclosure once the Plaintiffs failed to comply with the terms of the Special Forbearance Agreement. The Plaintiffs cited to no summary judgment evidence to support their claim that the Defendants threatened to take an action they could not. Therefore, summary judgment is **GRANTED** for the Defendants with respect to the Plaintiffs' claims under § 392.301(a)(8).

    2.       **Section 392.303(a)(2)**

Section 392.303(a)(2) of the Texas Finance Code prohibits a debt collector from using unfair or unconscionable means in collecting or attempting to collect interest or charges not authorized by the Note, Deed of Trust or applicable law. The Plaintiffs also base this claim on their contention that the foreclosure was unlawful, thus making the collection of any fees associated with acceleration and foreclosure unauthorized. Because, as discussed above, the court has rejected the Plaintiffs' arguments regarding the unlawful foreclosure and because the Plaintiffs failed to cite to any evidence that would create a fact issue that they were charged fees not authorized by the mortgage documents or applicable law, summary judgment is **GRANTED** for the Defendants as to the Plaintiffs' claims under § 392.303(a)(2).

### 3. Section 392.302(4)

Section 392.302(4) of the Texas Finance Code prohibits a debt collector from oppressing, harassing, or abusing a person by causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number. The Plaintiffs claim that third parties knocked on their door and telephoned them, asking to purchase their home at distressed prices, and sent letters regarding foreclosure and bankruptcy. The Plaintiffs offered no summary judgment evidence that the Defendants engaged in this behavior. Accordingly, summary judgment is **GRANTED** for the Defendants with respect to the Plaintiffs' claims under § 392.302(4).

### 4. Sections 392.304(a)(8) and 392.304(a)(19)

The TDCPA prohibits debt collectors from making fraudulent, deceptive, or misleading representations concerning "the character, extent, or amount of a consumer debt." TEX. FIN. CODE § 392.304(a)(8). The TDCPA also prohibits debt collectors from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id*. at § 392.304(a)(19). A statement is a misrepresentation if the defendant made "a false or misleading assertion." *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010). The TDCPA applies to foreclosure actions because "foreclosure actions inevitably involve a debt collection aspect." *See Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 730-732 (N.D. Tex. 2011). However, "[d]iscussions regarding loan modification or a trial payment plan are not representations, or misrepresentations, of the amount or character of the debt." *Watson v. Citimortgage*, No. 4:10-cv-707, 2012 WL 381205, at *7 (E.D. Tex. Feb. 3, 2012).

The Plaintiffs allege that the Defendants mislead them into entering into the Special Forbearance Agreement. The Plaintiffs claim that Wells Fargo advised them that they would be enrolled in the HAMP loan modification program before the balloon payment became due under the Special Forbearance Agreement. The summary judgment evidence is clear, however, that the Plaintiffs were unable to complete the terms of the Special Forbearance Agreement. Further, the Plaintiffs claim that Wells Fargo sent the Plaintiffs correspondence, indicating that the Plaintiffs may be eligible for a trial modification plan under HAMP. The Plaintiffs additionally argue that based on the HAMP solicitation letter, Wells Fargo allegedly cancelled the foreclosure sale. As such, the Plaintiffs argue that Wells Fargo mislead the Plaintiffs into believing that their loan would be modified and the Property would not be foreclosed upon. The court, however, has already considered and rejected these arguments, finding that the HAMP solicitation letter was merely an invitation to discuss modifying the terms of the Plaintiffs' loan and, therefore, unenforceable under the statute of frauds. Accordingly, summary judgment is **GRANTED** for the Defendants with respect to the Plaintiffs' claims under §§ 392.304(a)(8) and 392.304(a)(19).

**Plaintiffs' Negligent Misrepresentation Claim**

Under Texas law, a claimant alleging negligent misrepresentation must show the following:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation.

*Biggers*, 767 F. Supp. 2d at 734. "[T]he misrepresentation at issue must be one of existing fact" rather than a promise of future conduct. *Fankhauser v. Fannie Mae*, No. 4:10-cv-274, 2011 WL

1630193, at *7 (E.D. Tex. Mar. 20, 2011), *adopted by*, 2011 WL 1630177 (E.D. Tex. Apr. 29, 2011). Representations with regard to future loan modifications and foreclosure (or forbearance from foreclosure) "constitute promises of future action rather than representations of existing fact" and cannot support a negligent misrepresentation claim. *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 342 (5th Cir. 2012) (internal quotation marks and citations omitted).

The Plaintiffs contend that the Defendants represented that they would modify the Plaintiffs' loan and postpone the November 3, 2009 foreclosure sale. Since both alleged representations constitute promises of future action, the Plaintiffs' negligent misrepresentation claims fail as a matter of law.

Additionally, "[t]he economic loss doctrine has been applied consistently to bar claims for negligence and other tort claims when the parties' relationship and its attendant duties arise from a contract." *Stapp v. Bank of Am., N.A.*, No. 4:11-cv-203, 2012 WL 3853440, at * 5 (E.D. Tex. Sep. 5, 2012, *adopted by*, 2012 WL 4502426 (E.D. Tex. Sep. 28, 2012). The Plaintiffs allege that they suffered substantial stress, damage to credit reputation, loss of property, and loss of time spent, in addition to damages as a result of the contract.[4] However, the Plaintiffs' tort claim for negligent misrepresentation arises from the contract between the parties. *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625-26 (N.D. Tex. 2011). To recover for a claim of negligent misrepresentation, the Plaintiffs must show an injury independent from the subject matter of the contract; however, the Plaintiffs have not put forth any evidence that would create a genuine issue of material fact on this issue. The Plaintiffs' alleged "injuries are in no way independent of the

---

[4]The Plaintiffs further allege that they have incurred attorneys' fees. However, attorneys' fees are not recoverable in a negligence action. *See Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 568 (Tex. 2002).

subject matter of the deed of trust or note" and the parties' relationship thereunder. *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 634 (N.D. Tex. 2010). Indeed, but for the obligations created under the Deed of Trust and Note, the Plaintiffs would not have spent the time they purportedly did corresponding about the mortgage payments, nor would the Plaintiffs' credit have been affected by the foreclosure. *See Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-cv-2414-B, 2012 WL 555155, at *6 (N.D. Tex. Feb. 21, 2012). Accordingly, the Defendants' motion for summary judgment on the Plaintiffs' negligent misrepresentation claim is **GRANTED**.

**Plaintiffs' Quiet Title and Trespass to Try Title Claims**

"To prevail in a trespass-to-try title action, Plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). "The pleading rules are detailed and formal, and require a plaintiff to prevail on the superiority of his title, not on the weakness of a defendant's title." *Id*.

A suit to quiet title is an equitable remedy to clarify ownership by removing clouds on the title. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007). To establish a claim for suit to quiet title, Plaintiffs must show the following: (1) an interest in a specific property; (2) that title to the property is affected by a claim by the defendant; and (3) that the claim, although facially valid, is invalid or unenforceable. *See Rhodes v. Wells Fargo Bank, N.A.*, Civil Action No. 3:10-cv-02347-L, 2012 WL 5363424, at *34 (N.D. Tex. Oct. 31, 2012). An adverse claim, to constitute a cloud on the title removable by the court, must be one that is valid on its face but is proved by extrinsic evidence to be invalid or unenforceable. *See id.*

Because the Plaintiffs have not put forth any evidence that would create a genuine issue of material fact on their substantive claims that would give them a superior title to the Property, the Plaintiffs' suit to quiet title and claim for trespass to try title must fail, and the Defendants' motion for summary judgment on these claims is **GRANTED**.

**Plaintiffs' Malice, Declaratory Judgment, and Accounting Claims**

The Plaintiffs seek the remedies of a declaratory judgment, exemplary damages for malice, and an accounting. Because the court has granted summary judgment for the Defendants on all of the Plaintiffs' claims, the Plaintiffs are not entitled to any damages or equitable remedies.

## Conclusion

Based on the foregoing, the Defendants' motion for summary judgment (docket entry #15) is hereby **GRANTED**. The Defendants' objections to and motion to strike Plaintiffs' summary judgment evidence (docket entry #23) is **GRANTED IN PART**.

IT IS SO ORDERED.

**SIGNED this the 30th day of September, 2013.**

*Richard A. Schell*
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE